## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| American Immigration Lawyers Association, 1331 G Street, NW Suite 300 Washington, D.C. 20005-3142 <br><br> Plaintiff, <br><br> v. <br><br> U.S. Department of Homeland Security c/o Office of the General Counsel 245 Murray Lane, SW Mail Stop 0485 Washington, DC 20528-0485 <br><br> U.S. Citizenship and Immigration Services c/o Office of the General Counsel 245 Murray Lane, SW Mail Stop 0485 Washington, DC 20528-0485 <br><br> Defendants. | **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT** <br><br> Case No. 20-897 |

## <u>INTRODUCTION</u>

1.     We are facing the biggest threat to our lives from an enemy we are struggling to defeat.  The COVID-19 pandemic has caused a worldwide pause in almost every facet of life.  Unlike its government counterparts, United States Citizenship and Immigration Services ("USCIS") has finally decided not to temporarily toll deadlines and extend any expiration of immigration-related

benefits for those within the United States, many whom work as nurses and healthcare workers.

2.      Defendants' conduct has harmed attorneys representing U.S. employers and foreign nationals by placing them in a catch-22: risk exposure and try to protect their clients' immigration status or protect themselves and risk exposure to claims of ineffective representation.

3.      On March 13, 2020, the President declared a national emergency.  The mayor of Washington D.C. had previously declared a state of emergency on March 11, 2020.[1]

4.      On March 16, 2020, this Court issued a Standing Order, No. 20-9 (BAH), to limit the court operations due to the exigent circumstances created by the COVID-19 Pandemic.[2]

5.      Governors, Mayors and local officials have implemented various orders and directives to the general population to maintain social distancing and work at home policies.  Over 30 states have shelter in place orders, 85% of the nation's residents must stay home, and schools in all fifty states have closed to prevent the further

---

[1] Standing Order No. 20-9 BAH, D.D.C. Mar. 16, 2020).
[2] *Id.*

spread of the COVID-19 virus in accordance with the declaration of national emergency.[3]

6.      USCIS has closed all local offices until at least May 3, 2020.[4]

7.      Notwithstanding the universal steps taken by other federal and state governments and agencies in response to the COVID-19 pandemic to extend deadlines, hold cases or statuses in abeyance, and otherwise toll any time that may impair individuals, USCIS has arbitrarily and unconstitutionally refused to take measures to toll deadlines and the expiration dates for foreign nationals in the United States, including dates related to lawful status and work authorization.[5]

8.      The pandemic necessitates a pause across the immigration spectrum, including any and all deadlines for initial applications, responses to any and all Requests for Evidence or other responses due on or after March 1, 2020, requests

---

[3] *See, e.g.,* http://nycourts.gov/whatsnew/pdf/EO-202.8-ocr.pdf.  Executive Order 202.8 is not applicable to essential businesses and law firms are generally not considered essential businesses, although it is possible to file a request with New York State for designation as an essential business. See https://esd.ny.gov/guidance-executive-order-2026; https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/; https://www.chicagotribune.com/coronavirus/ct-coronavirus-illinois-shelter-in-place-lockdown-order-20200320-teedakbfw5gvdgmnaxlel54hau-story.html

[4] https://www.aila.org/infonet/uscis-temporarily-closing-offices-to-the-public. USCIS operates five service centers that process and adjudicate certain immigration applications and petitions. Service centers do not provide in-person services, conduct interviews, or receive walk-in applications, petitions, or questions. They work only on certain applications or petitions that applicants have mailed, filed online, or filed with a USCIS Lockbox. https://www.uscis.gov/forms/service-center-forms-processing

[5] Declaration of Sharvari Dalal-Dheini, Esq. (Exhibit A).

for extension of status, maintenance of status, and reprieve from any expiration of status.

9.      The need of our nation's workforce will increase, especially for the thousands of nonimmigrants working on the frontlines in the medical and nursing sectors and laborers continuing to make sure the delivery of supplies and necessary goods continue.  The United States can ill afford the loss of such workers even for a matter of days where state and federal public officials have forecast severe shortages of health care resources and the ability of Americans to work and survive using remote communication technology is already under unbearable strain.  The entire world has suspended business as normal.

10.     Defendants' conduct has effectively ended the ability of immigration attorneys to competently represent clients without violating state and local orders and jeopardizing the safety and health of themselves, their staff and their clients.[6]

11.     This civil action seeks declaratory and injunctive relief against the United States Department of Homeland Security ("DHS) and its component agency USCIS under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et. seq.,* and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

---

[6] *See* Exhibit B (Declaration of Cyrus D. Mehta); Exhibit C (Declaration of Cheryl David); Exhibit D (Declaration of Leon Rodriguez); Exhibit E (Declaration of Tammy Fox-Isicoff).

12.     This Court should declare that the COVID-19 pandemic constitutes an extraordinary circumstances beyond the control of U.S. employers and foreign national seeking immigration benefits, including their legal representatives, and order USCIS to toll deadlines and the expiration dates for any individual's lawful status, including the expiration dates for employment authorization where applicable, from the date the President declared a national emergency until 90 days after the emergency officially ends.

13.     In doing so, USCIS should ensure that all foreign nationals remain in lawful status, including but not limited to conditional lawful permanent residents, students, nonimmigrant workers, recipients of Deferred Action for Childhood Arrivals and those Temporary Protected Status.

14.     Furthermore, the tolling of deadlines should include those admitted under the Electronic System for Travel Authorization ("ESTA") and the Visa Waiver Program ("VWP"), who are unable to return to their home country and unable to make a satisfactory departure request via their legal representatives at local USCIS field offices that remain closed to the public.[7]

---

[7] 8 C.F.R. § 217.3

# JURISDICTION

15.     This case arises under 8 U.S.C. § 1101, *et. seq.*, and the APA, 5 U.S.C. § 701, *et. seq.*  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States.  This Court also has the authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702 and 28 U.S.C. §§ 1361-62.  The United States has waived sovereign immunity under 5 U.S.C. § 702.

16.     Defendants' action has injured and will continue to irreparably harm Plaintiff's members, whose businesses and legal representation depends on the ability to gather documentary evidence, contact clients to properly file immigration petitions and applications, and advise foreign nationals and employers seeking immigration benefits.  The successful resolution of this matter does not require the participation of Plaintiff's members.[8]

17.     Bringing to bear enormous staff and volunteer resources, Plaintiff has attempted to counteract and prevent the discrete and demonstrable injury caused by Defendants' unlawful actions.  As such, Defendants' conduct has harmed Plaintiff as an organization from the material disruption and diversion of resources that have been necessary to combat Defendants' obstinance to the detriment of service

---

[8] Exhibit A.

to members through effective and ethical guidance on the practice of immigration law.[9]

18.     Defendants' conduct has materially frustrated Plaintiff's core missions of assisting members in effectively and competently pursuing their law practice and enhancing their professional capacity.  Defendants' failure to toll existing deadlines has rendered attorneys sheltered in place unable to protect clients from the catastrophic impact of untimely filings for immigration benefits, failure to file for necessary extensions of stay and failure to otherwise maintain lawful status.[10]

19.     Plaintiff's members cannot effectively assist their clients without violating county, city, state, or federal law or without endangering themselves, their clients, and staff members.  Defendants' decision has significantly interfered with Plaintiff's mission and will, if left unchecked, continue to impose substantial, tangible costs on the organization. [11]

20.     Defendants' conduct has already caused Plaintiff to divert scarce resources—including staff time away from preparing affected members on how to

---

[9] *See* U.S. Const. art. III, § 2; *Chamber of Commerce v. EPA*, 642 F.3d 192, 199, 395 U.S. App. D.C. 193 (D.C. Cir. 2011); *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142 (2009).  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79, 102 S. Ct. 1114 (1982); *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138, 394 U.S. App. D.C. 239 (D.C. Cir. 2011) (an organization "can assert standing on its own behalf, on behalf of its members or both" where it has suffered a "concrete and demonstrable injury to [its] activities.")
[10] Exhibit A.
[11] Exhibit A-F.

cope and practice during the COVID-19 pandemic.  If Defendants had temporarily tolled deadlines and the expiration dates for foreign nationals, Plaintiff would be able to properly focus on best practices for members to cope with the economic fallout and properly represent clients during this unprecedented economic and health crisis by creating new resources and materials.[12]

21.    Defendants' continued conduct will materially and irreparably impair Plaintiff's mission by foreclosing its ability to properly advise its members on how to ethically and competently represent its clients during the COVID-19 pandemic, including those stranded in the United States who cannot return to their home country.[13]

## **VENUE**

22.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(e) because (1) this is a civil action in which Defendants are agencies of the United States; (2) a substantial part of the events or omissions giving rise to the claim occurred in the

---

[12] Exhibit A. This includes, but not is not limited to the preparation and requests set forth in the following letters:  AILA Sends Letter to USCIS Regarding California's "Stay at Home" Order; AILA Sends Letter to USCIS Requesting Guidance on Its Response to COVID-19; AILA Sends Letter to DHS Requesting Guidance Concerning Form I-9 Compliance and COVID-19.

[13] *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430, 322 U.S. App. D.C. 135 (D.C. Cir. 1996); *Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276, 307 U.S. App. D.C. 401 (D.C. Cir. 1994).

District of Colombia, AILA and Defendants are headquartered within this district;

and (3) there is no real property involved in this action.

## PARTIES

**Plaintiff:**

23.     AILA is the national association of immigration lawyers established to

promote justice, advocate for fair and reasonable immigration law and policy,

advance the quality of immigration and nationality law and practice, and enhance

the professional development of its members.  It currently has over 15,000 member

attorneys.

**Defendants:**

24.     Defendant Department of Homeland Security ("DHS") is a cabinet

department of the United States federal government overseeing many immigration-

based component parts, such as USCIS, Immigration and Customs Enforcement,

and Customs and Border Protection.

25.     Defendant USCIS is a component agency of DHS and shares responsibility

for the implementation of the Immigration and Nationality Act ("INA") and other

immigration-related laws of the United States.  USCIS is specifically tasked with

the adjudication of immigration benefits, which includes the processing of

employment-based and family-based immigrant and nonimmigrant petitions,

applications for asylum, applications for naturalization, and applications for employment authorization associated with applications.

## **LEGAL BACKGROUND**

26.     The Immigration and Nationality Act of 1952 expresses Congress's intent that foreign nationals who meet certain qualifications may immigrate to the United States or gain admission on a temporary basis, in furtherance of the goals of reunifying families, admitting immigrants with skills that are useful to the United States economy, and promoting diversity.[14]

27.     The INA and concomitant immigration laws and regulations authorize foreign nationals to apply for various immigration benefits, including those for protection in the United States, temporary nonimmigrant status, lawful immigrant status in the United States whether affirmatively or as part of removal proceedings, and naturalization.[15]

28.     Deadlines to file for immigration benefits constitutes an essential component of the immigration system.  The statutory and regulatory provisions contain a labyrinth of deadlines that govern the immigration system, including eligibility for

---

[14] *See Elkins v. Moreno*, 435 U.S. 647, 664 (1978).
[15] *See, e.g.*, Title II, Ch.1 of the INA §§ 201-210, 8 U.S.C. §§ 1151-1160 (allocation and limits of immigrant visas, asylees, refugees), Title II, Ch. 2, INA §§ 211-219, 8 U.S.C. §§ 1182-1189 (admission of immigrants and nonimmigrants); Title II, Ch. 5 of the INA §§ 245-50, 1255-1260 (adjustment and change of status); Title III, Ch. 1-4, INA §§ 301-61, 8 U.S.C. §§ 1401-1504 (naturalization).

benefits, requests for extensions, maintenance and compliance of status, and penalties for noncompliance.[16]

29.     For example, working without authorization and the accrual of unlawful presence time can result in severe penalties: foreign nationals who leave the United States after having been "unlawfully present" for more than 180 days are barred from reentering the United States for three years.  Those who accumulate more than 365 days of unlawful-presence time remain barred from entering for ten years.[17]

30.     Remaining in the United States for as little as one day beyond the authorized period of stay invalidates a foreign national's visa.[18]

31.     By regulation, "[e]very form, benefit request, or other document must be submitted to DHS and executed in accordance with the form instructions regardless of a provision of 8 CFR chapter I to the contrary."[19]

32.     "An applicant or petitioner may be represented by an attorney in the United States, as defined in § 1.2 of this chapter, by an attorney outside the United States

---

[16] *See, e.g.* 8 U.S.C. § 1158(a)(2)(B) (an applicant for asylum must establish "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of alien's arrival in the United States."); *See* 8 U.S.C. § 1182(a)(9)(B) (A nonimmigrant person is deemed to be "unlawfully present" if that person is "present in the United States after the expiration of the period of stay authorized by the Attorney General.").
[17] 8 U.S.C. § 1182(a)(9)(B)(i).
[18] 8 U.S.C. § 1202(g).
[19] 8 C.F.R. § 103.2(a) (emphasis added).

as defined in § 292.1(a)(6) of this chapter, or by an accredited representative as defined in § 292.1(a)(4) of this chapter."[20]

33.    "All benefit requests must be filed in accordance with the form instructions."[21]

34.    "USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt at the location designated for filing such benefit request whether electronically or in paper format."[22]

35.    "A benefit request which is rejected will not retain a filing date."[23]

36.     A benefit request will be rejected if it is not: (A) Signed with valid signature; (B) Executed; (C) Filed in compliance with the regulations governing the filing of the specific application, petition, form, or request; and (D) Submitted with the correct fee(s). If a check or other financial instrument used to pay a fee is returned as unpayable, USCIS will re-submit the payment to the remitter institution one time.[24] If the instrument used to pay a fee is returned as unpayable a second time, the filing will be rejected, and a charge will be imposed in accordance with 8 C.F.R. § 103.7(a)(2).[25]

---

[20] 8 C.F.R. § 103.2(a)(3).
[21] *Id.*
[22] 8 C.F.R. §103.2(a)(7)(i).
[23] 8 C.F.R. § 103.2(a)(7)(A)(ii).
[24] 8 C.F.R. § 103.2(a)(7)(ii)(D).
[25] *Id.*

37.     "A rejection of a filing with USCIS may not be appealed."[26]

38.     The regulations allow most nonimmigrant visa holders to seek an extension of status before their specific period of admission in the United States expires.[27]

39.     For example, under 8 C.F.R. § 214.1(c)(1), a petitioner seeking the services of an E–1, E–2, E–3, H–1B, H–1B1, H–2A, H–2B, H–3, L–1, O–1, O–2,P–1, P–2, P–3, Q–1, R–1, or TN nonimmigrant beyond the period previously granted, must apply for an extension of stay on the form designated by USCIS, with the fee prescribed in 8 C.F.R. § 103.7(b)(1), with the initial evidence specified in § 214.2, and in accordance with the form instructions, which sets out that the extension or change of status must be filed before the foreign national's authorized stay expires.

40.     Any other nonimmigrant alien, except a nonimmigrant in F or J status who has been granted "duration of status," who seeks to extend his or her stay beyond the currently authorized period of admission, must apply for an extension of stay on Form I-539 with the fee required in 8 C.F.R. §103.7 together with any initial evidence specified in 8 C.F.R. § 214.2, and on the application form, before the foreign national's authorized stay expires.[28]

---

[26] 8 C.F.R. § 103.2(a)(7)(iii).
[27] 8 C.F.R. § 214.1.
[28] 8 C.F.R. § 214(c)(2).

41.     However, "an extension of stay may not be approved for an applicant who failed to maintain the previously accorded status or where such status expired before the application or petition was filed."[29]

42.     The regulations provide for the following exception: "failure to file before the period of previously authorized status expired may be excused in the discretion of the Service and without separate application, with any extension granted from the date the previously authorized stay expired, where it is demonstrated at the time of filing that:

> (i)     The delay was due to extraordinary circumstances beyond the control of the applicant or petitioner, and the Service finds the delay commensurate with the circumstances;
> (ii)     The alien has not otherwise violated his or her nonimmigrant status;
> (iii)     The alien remains a bona fide nonimmigrant;
> (iv)     Except where the nonimmigrant classification for which the alien seeks to extend is exempt from section 212(a)(4) of the Act or that section has been waived, as a condition for approval of extension of status, the alien must demonstrate that he or she has not received since obtaining the nonimmigrant status he or she seeks to extend one or more public benefits as defined in 8 CFR 212.21(b), for more than 12 months in the aggregate within any 36-month period (such that, for instance, receipt of two benefits in one month counts as two months).  For the purposes of this determination, DHS will only consider public benefits received on or after October 15, 2019 for petitions or applications

---

[29] 8 C.F.R. § 214(c)(4).

postmarked (or, if applicable, submitted electronically)
on or after that date.[30]

43.     "Where an applicant or petitioner demonstrates eligibility for a requested

extension, it may be granted at the discretion of the Service. There is no appeal

from the denial of an application for extension of stay filed on Form I-129 or I-

539."[31]

44.     In 2020, some applications for extensions of stay have taken five months or

longer to adjudicate.[32]

45.     Processing times at the Vermont Service Center currently range up to nine

months for an extension of status for continued work with the same employer, and

eleven months for a change of employer petition.[33]  Certain nonimmigrant

employees are permitted to continue working for the same employer no more than

240 days beyond expiration dates, and only if an extension of stay petition is

timely filed.[34]

46.     In the absence of filing for an extension, the authorized period of admission

constitutes a failure to maintain status and jeopardizes the foreign national's future

admissibility.

---

[30] 8 C.F.R. §§ 214.1(c)(1)-(4)
[31] 8 C.F.R. § 214.1(c)(5); *see also* 8 C.F.R. § 248.1(b)(1).
[32] https://egov.uscis.gov/processing-times/historic-pt
[33] https://egov.uscis.gov/processing-times/
[34] 8 C.F.R. § 274a.12(b)(20).

47.     Similarly, a nonimmigrant change of status as provided under 8 U.S.C. §

1258  "may not be approved for an alien who failed to maintain the previously

accorded status or whose status expired before the application or petition was filed,

except that failure to file before the period of previously authorized status expired

may be excused in the discretion of USCIS, and without separate application,

where it is demonstrated at the time of filing that:"

> 1.     The failure to file a timely application was due to
> extraordinary circumstances beyond the control of the
> applicant or petitioner, and USCIS finds the delay
> commensurate with the circumstances;
>
> 2.     The alien has not otherwise violated his or her
> nonimmigrant status;
>
> 3.     The alien remains a bona fide nonimmigrant; and
>
> 4.     As a condition for approval, an alien seeking to
> change nonimmigrant classification must demonstrate
> that he or she has not received, since obtaining the
> nonimmigrant status from which he or she seeks to
> change, one or more public benefits, as defined in 8 CFR
> 212.21(b), for more than 12 months in the aggregate
> within any 36-month period (such that, for instance,
> receipt of two benefits in one month counts as two
> months). For purposes of this determination, DHS will
> only consider public benefits received on or after October
> 15, 2019 for petitions or applications postmarked (or, if
> applicable, submitted electronically) on or after that date.
> This provision does not apply where the nonimmigrant
> classification from which the alien seeks to change or to
> which the alien seeks to change is exempt from section

212(a)(4) of the Act, or where that section has been waived.[35]

## FACTUAL BACKGROUND

48.     As of April 3, 2020, more than 250,000 people have tested positive for COVID-19 in the United States (over 1 million worldwide) and at least 6,000 have died.  The statistics have grown exponentially.[36]

49.     In response to this crisis, almost all federal agencies, state agencies, and some federal courts have taken measures to extend deadlines, hold cases in abeyance, and otherwise maintain the status quo given the situation.[37]

50.     At this time, almost all countries have extended all visas and authorized period of stay for those within its borders, closed its borders to re-entry and restricted the return of all citizens from abroad.[38]

51.     In an effort to assist USCIS respond to the urgent needs of nonimmigrants in the midst of the COVID-19 pandemic, AILA sent a letter on March 16, 2020, that

---

[35] 8 C.F.R. § 248(1)(c).
[36] https://www.cnn.com/interactive/2020/health/coronavirus-us-maps-and-cases/
[37] *See* https://www.brennancenter.org/our-work/research-reports/courts-responses-covid-19-crisis
[38] https://www.forbes.com/sites/jamesasquith/2020/04/02/april-update-coronavirus-travel-update-90-of-countries-have-travel-restrictions/#3ef8ce6a3024

urged USCIS to "consider and establish" a detailed list of "proactive measures

immediately to limit in-person contact to the greatest extent possible."[39]

52.     USCIS responded and adopted the following measures:

>       1.      As of March 18, U.S. Citizenship and Immigration
>       Services has suspended routine in-person services until at
>       least April 1 to help slow the spread of Coronavirus
>       Disease 2019 (COVID-19).
>
>       2.      USCIS staff will continue to perform duties that do
>       not involve contact with the public. However, USCIS
>       will provide emergency services for limited situations.
>       To schedule an emergency appointment contact the
>       USCIS Contact Center.
>
>       3.      USCIS domestic field offices will send notices to
>       applicants and petitioners with scheduled appointments
>       and naturalization ceremonies impacted by this closure.
>       USCIS asylum offices will send interview cancellation
>       notices and automatically reschedule asylum
>       interviews.[40]

53.     On the evening of March 20, 2020, USCIS excused the requirement that

filings for immigration benefits contain "wet signatures."[41]

---

[39] *See* https://www.aila.org/advo-media/aila-correspondence/2020/uscis-requesting-guidance-on-its-response-to-covid.
[40] https://www.uscis.gov/ (last visited on April 3, 2020)
[41] https://www.uscis.gov/news/alerts/uscis-announces-flexibility-submitting-required-signatures-during-covid-19-national-emergency

54.     On the same day, AILA sent USCIS a letter seeking immediate information
related to the impact of COVID-19 and the California "stay at home" order on
California Service Center (CSC) Operations.[42]

55.     DHS also acquiesced to AILA's request for flexibility in the 3-day in-person
Form I-9 compliance process and allow for initial virtual verification for employers
with employees taking physical proximity precautions.[43]

56.     On March 23, 2020, Plaintiff sent USCIS a follow-up letter requesting
additional reasonable accommodations to enable petitioners, applicants, and
representatives, who are now required to work from home or shelter in place, to
continue filing benefit requests with USCIS, such as allowing the payment of filing
fees by credit card, allow for mail forwarding, allowing for the electronic
submission of documents, and the submission of digital signatures.[44]

57.     On the same date, Plaintiff sent USCIS a letter demanding that it toll
existing deadlines immediately and warning that Plaintiff would explore all
alternatives if USCIS failed to take appropriate measures.[45]

---

[42] https://www.aila.org/advo-media/aila-correspondence/2020/aila-letter-to-uscis-regarding-californias-order.
[43] https://www.aila.org/advo-media/aila-correspondence/2020/aila-letter-requesting-i9-guidance;
[44] https://www.aila.org/advo-media/aila-correspondence/2020/aila-requests-additional-accommodations-from-uscis
[45] https://www.aila.org/advo-media/aila-correspondence/2020/aila-sends-letter-to-uscis-demanding-immediate

58.     On March 27, 2020, USCIS adopted measures to minimize the immigration consequences associated with responding to requests for evidence (RFEs) and notices of intent to deny (NOIDs) dated between March 1 and May 1, 2020.[46]

59.     On March 30, 2020, USCIS announced that it would reuse previously submitted biometrics in order to process valid Form I-765, Application for Employment Authorization, extension requests due to the temporary closure of Application Support Centers (ASC) to the public in response to the Coronavirus (COVID-19) pandemic.[47]

60.     Notwithstanding these measures and the acknowledgement of the practical impossibility of carrying out routine functions during the pandemic, USCIS has decided not to toll the time for the filing of immigration benefits and the expiration dates for foreign nationals.  In its March 16, 2020 letter AILA urged USCIS to do so by temporarily taking several measures, including the following:

> 1.     Deem the national emergency over the COVID-19 outbreak an "extraordinary circumstance beyond the control of the applicant or petitioner" pursuant to 8 C.F.R. § 214.1(c)(4) and 8 C.F.R. § 248.1(b)(1) and excuse any late filings of extension of stay or change of status requests on this basis for up to 90 days after the end of the national emergency.
> 2.     Grant an automatic extension of stay for a period of up to 90 days to individuals whose nonimmigrant

---

[46] USCIS Announces Flexibility for RFEs and NOIDs 03-27-2020.pdf
[47] COVID-19 Biometrics Reuse 03-30-2020.pdf

status is expiring. Provide an automatic grant of deferred action for the duration of the national emergency for individuals whose status has expired and cannot be extended or changed.

3.     Provide an automatic grant of deferred action for the duration of the national emergency for individuals whose status has expired and cannot be extended or changed.[48]

61.    USCIS' conduct and inaction at this point effectively represents a decision that it will not toll the times for immigration benefits, such as the one-year deadline for asylum and the time-sensitive deadlines or otherwise protect those who may lose eligibility due to the inability to gather the necessary evidence required and the practical difficulty, if not impossibility, of filing time-sensitive applications due to the COVID-19 pandemic.[49]

---

[48] Exhibit C.

[49] The USCIS online system allows only a limited number of applications to be submitted online. They are: Form I-90, Application to Replace Permanent Resident Card; Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings; Form N-400, Application for Naturalization;  Form N-565, Application for Replacement Naturalization/Citizenship Document; and Form N-600 and N-600k, Certificates of Citizenship for people born abroad who can derive citizenship through US citizen parents or grandparents; and Form I-130; Petition for Alien Relative. None of the forms that requires a timely filing to extend or change status are part of the USCS online system. Nor can an application for asylum, Form I-589, that must be filed within the one year of arrival deadline can be filed online.  See https://www.uscis.gov/news/news-releases/uscis-makes-another-form-available-online-filing

62.    USCIS' conduct has placed Plaintiff's members in "legal peril" as clients

"can sue . . .  for malpractice and also potentially file complaints with the

disciplinary authorities"[50] if they fail to meet deadlines.

63.    The filings for immigration benefits is a very paper-intensive process; the

forms require the submission of supporting evidence and, with limited exceptions,

cannot be filed electronically.[51]

64.    The now-dangerous efforts of Plaintiff's members to comply with existing

deadlines such as gathering and producing paper copies of petitions, issuing

checks, and reproducing signatures require in-person contact and thus will place

them, their staff, and their clients at risk of COVID-19, a deadly disease, and

violate the mass local orders to shelter in place.[52]

65.    For example, AILA member, Ms. Tammy Fox-Isicoff has a client seeking

benefits under VAWA who must file within 60 days. However, the client cannot

obtain the documentation needed "to file the petition due to the closure of

companies throughout Florida that would have documentation to provide the bona

---

[50] *See* Declaration of Mr. Cyrus D. Mehta (Exhibit B).
[51] *Id*; *see also* Declaration of Cheryl David (Exhibit C); Declaration of Leon Rodriguez (Exhibit D).
[52] *Id.*

fides of her marriage and her abuse." Moreover, Ms. Fox-Isicoff must meet with the client, but "she lives in the Keys and cannot leave the Keys."[53]

66.     The global pandemic has caused a great need for a pause in the workplace, at home, in schools – everywhere.  It remains irrational for USCIS to misunderstand the human and professional needs of Plaintiff's members.

67.     AILA's members have suffered from the unlawful and unconstitutional action by Defendants which are germane to the organization's interest in serving the interest and promoting the effective practice of immigration law and the issues involved do not require the participation of individual members to be resolved properly.

68.     Plaintiff's members will continue to suffer harm as a number of their clients have deadlines that either cannot be met or, if met, would require the attorney and his or her client to violate a local order to "shelter in place" and maintain "social distancing."[54]

---

[53] *See* Declaration of Ms. Tammy Fox-Isicoff (Exhibit E).
[54] Exhibits B-E

## STATEMENT OF CLAIMS

**Count One:**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.*
USCIS has arbitrarily and capriciously declined to adopt necessary measures
in response to the COVID-19 pandemic**

69.    The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof."[55]

70.    The APA empowers this Court to set aside a final agency action where, as here, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[56]

71.    "Agency action," for purposes of the APA includes, an agency's "failure to act."[57]

72.    Defendants' conduct constitutes an action as they have "not frankly acknowledged" and addressed the harm to Plaintiff's members from failing to toll deadlines and extend the expiration dates of necessary immigration documents.[58]

---

[55] 5 U.S.C. § 702.
[56] 5 U.S.C. § 706(2)(A).
[57] 5 U.S.C. § 706(2).
[58] *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C.Cir.1987).

24

The impact of Defendants' conduct will continue to have "the same impact on the rights of the parties as an express denial of relief."[59]

73.     USCIS's arbitrary and unlawful failure to protect individuals from accruing unlawful presence and otherwise stop time for immigration purposes during the COVID-19 pandemic represents an arbitrary and capricious final agency action.

74.     Defendants' decision not to toll deadlines, expiration dates, and otherwise hold time-sensitive applications and communication in abeyance during the COVID-19 national emergency is wholly irrational and damaging to the safety of Plaintiff's members, their staff, and their clients, and possibly USCIS employees as well.

75.     Defendants' actions have prevented, and will continue to prevent, Plaintiff's members from having the opportunity to meaningfully comply with the statutory and regulatory deadlines for all immigration benefits processed by the agency.

76.     Unless remedied by this Court, AILA and its membership will lose their respective ability to properly and ethically comply, apply and provide immigration services authorized under law.

---

[59] *Id.*; *Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1531 (D.C.Cir.1990); *see also Hi-Tech Pharmacal Co. v. U.S. Food and Drug Admin.*, 587 F.Supp.2d 1 (D. D.C. 2008).

77.    Because USCIS' decision is arbitrary, capricious and contrary to law, it must

be set aside.[60]

**Count 2**
**Violation of Procedural Due Process**
**USCIS' Response to COVID-19 does not comport with Plaintiff's rights to due
process**

78.    Plaintiff re-alleges and incorporates by reference herein each one of the

allegations set forth above.

79.    The Due Process Clause of the Fifth Amendment provides that "[n]o person

shall . . . be deprived of life, liberty, or property, without due process of law."[61]

80.    In some circumstances, "the Constitution imposes upon the State affirmative

duties of care and protection with respect to particular individuals."[62]

81.    The government has a duty to protect an individual from harm "when

[government] officials affirmatively act to increase or create the danger that

ultimately results in the individual's harm."[63]

---

[60] 5 U.S.C. § 706(2)(A).
[61] U.S. Const. amend. V.
[62] *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989).
[63] *Butera v. D.C.*, 235 F.3d 637, 651 (D.C. Cir. 2001).

82.    "Generally, procedural due process requires adequate notice and a meaningful opportunity to be heard at some point before a right or interest is forfeited."[64]

83.    Defendants' failure to rationally and adequately act in response to the COVID-19 pandemic constitutes an unconstitutional created danger to Plaintiff's members.  Defendants position to proceed as business as usual will expose attorneys to COVID-19 as they violate local orders to shelter in place and meet with clients and otherwise work to meet deadlines for immigration benefits.

84.    Defendants have unlawfully failed to appreciate the exigent circumstances worldwide that have prevented a meaningful opportunity to comply with the statutory and regulatory deadlines to apply for immigration benefits or respond to agency deadlines.

85.    Defendants' conduct raises the harm to Plaintiff's members and shocks the conscience.  The deliberate decisions place those in a position to violate local orders to shelter in place to come out of confinement to file applications, which dramatically heightens the danger of contracting the deadly virus thereby intruding on the constitutional rights of Plaintiff's members.

---

[64] *Williams v. Conner*, 522 F. Supp. 2d 92, 103 (D.D.C. 2018), *citing Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).

86.     Defendants' conduct violates the Due Process Clause.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A.      Assume jurisdiction over this matter;

B.      Declare that the COVID-19 pandemic constitutes an extraordinary circumstance beyond the control of Plaintiff's members representing applicants or petitioners for immigration benefits;

C.      Order USCIS to toll any and all deadlines for initial applications, responses to any and all Requests for Evidence or other responses due on or after March 1, 2020, requests for extension of status, maintenance of status, and reprieve from any expiration of status or employment authorization;

D.      Order USCIS to "maintain the status quo" for purposes of eligibility for protection from removal, work authorization, and immigration benefits from the date the President declared that a national emergency began on March 1, 2020, until 90 days after the emergency officially ends;

E.      Award attorneys' fees, costs, and interest as permitted by law; and

F.     Grant such further and other relief as may be just and proper.

Respectfully submitted,

/s/Jesse M. Bless

Jesse M. Bless (MA BBO # 660713)
American Immigration Lawyers Association
1301 G Street NW, Ste. 300
Washington, D.C. 20005
(781) 704-3897
jbless@aila.org

Dated:  April 3, 2020

## **CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated:  April 3, 2020                      Respectfully submitted,

/s/Jesse M. Bless
Jesse M. Bless (MA BBO # 660713)
American Immigration Lawyers Association
1301 G Street NW, Ste. 300
Washington, D.C. 20005
(781) 704-3897
jbless@aila.org