# AFFIDAVIT OF SHARVARI DALAL-DHEINI, ESQ.

I hereby state under penalty of perjury that I have personal knowledge as to the truth of the following:

1. I am an attorney in good standing in the state of Maryland.

2. I am currently employed as the Director of Government Relations for the American Immigration Lawyers Association ("AILA"), headquartered in Washington, D.C.  In this role, I am responsible for liaising with government agencies, advocating for necessary immigration policy changes, and providing case assistance and practice resources to our members regarding the practice of immigration law.  As a member of AILA's Management Team, I have access to information regarding AILA's priorities, financial expenses, and the current state of all divisions, including educational, government relations, litigation, practice and professionalism, member relations, publications, education efforts, and business operations.

3. AILA is a national membership association of more than 15,000 attorneys and law professors who practice and teach immigration law. AILA members provide legal representation to, among others, U.S. business and industries seeking foreign workers, foreign students, entertainers, athletes, families, and individuals seeking relief under our nation's immigration laws. Our members regularly appear before various administrative bodies, including the U.S. Citizenship and Immigration Services ("USCIS").

4. Our mission is to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration and nationality law and practice, and to enhance the professional development of our members. To that end, we engage in advocacy before Congress, the Judiciary, the Federal Agencies and the media for the

immigration-related interests of our members and their clients. We also promote the delivery of competent, ethical, and lawful immigration services, and increase the knowledge and professionalism of our members by providing continuing legal education and technical support.

5. In addition to our national organization, AILA supports 39 local chapters throughout the United States. Each of these local chapters is a separately run organization with their own bylaws and leadership. The chair of each local chapter is on AILA's Board of Governors.

6. The AILA Government Relations department works with 23 different volunteer committees that each work on different issues related to relevant federal agencies or subject matter areas, such as policies issued by USCIS, business immigration issues, and asylum issues.

7. AILA National Staff advance AILA's policy and advocacy objectives through a number of methods, including researching the impact of existing immigration regulations, policies, and procedures on our members; communicating regularly with membership through different channels to get more information about how these policies and procedures are being implemented; identifying common trends in their experiences; relaying these trends to relevant staff within the legislative and executive branches; and lobbying for sensible legislative and policy immigration reforms that will promote efficient and effective representation of noncitizens.

8. To understand the effects policies and procedures promulgated by immigration agencies have on our members, my team and I work closely with AILA's local chapter leaders and national committee volunteers; solicit information from members directly through online forms asking for case examples; and direct email and telephone communication with

individual members. The issues that local leadership and national volunteers raise inform my communication and advocacy efforts at the national level. This allows me to stay abreast of the experiences of our members on the ground and the pressing issues that they face in their daily work.

9. The process to file for immigration benefits with USCIS is a paper-intensive process and frequently requires in-person interaction in order to prepare and submit petitions and applications, as it involves acquiring original handwritten signatures, issuance of checks, acquiring evidence, printing and copying of tens or hundreds of pages in support of petitions that must be submitted to USCIS by mail or private courier services. In addition, the application process frequently requires an individual to appear for a physical interview or capture of biometrics at USCIS offices before a case can be processed. USCIS has also set forth tight deadlines by policy and regulation by which time attorneys must file petitions, applications, and responses to requests for additional evidence, sometimes as short as 30 days.  Failure to meet these deadlines can result in significant consequence for the attorneys' clients' immigration status, such as an inability to maintain lawful status, which can irreparably harm an individual's ability to stay or return to the United States, as well as jeopardize an attorneys' livelihood if they are subject to malpractice claims.

10. Even before the President's Declaration of National Emergency due to the COVID-19 (coronavirus) pandemic on March 13, 2020, AILA members across the country began reporting issues and concerns related to their ability to comply with state and local orders to mitigate the spread of the virus through social distancing while still effectively representing their clients by timely filing petitions.  As the coronavirus spreads rampantly

throughout the United States, this problem has become even more acute and requires immediate action by USCIS to provide necessary flexibility in the filing procedures.

11. Just like the rest of the world, AILA members were caught off guard by stay at home orders that were put into place with very short notice and have needed to quickly try and adapt to new agency policies, including those related to the filing of immigration-related documents.  AILA members subject to stay at home orders have reported significant difficulties in balancing the need to acquire necessary signatures, required evidence and forms of payment without risking exposure to themselves, their staff, their clients and possibly facing penalties for failure to comply with state and local edicts.  Trying to accommodate to these new working conditions both within their practices and their clients' lives have resulted in loss of precious time as they race against the clock to meet deadlines imposed by USCIS and subject themselves to possible health-risks.

12. In order to help members competently pursue their law practices and maintain professional conduct, AILA staff has shifted resources from other critical areas and worked above and beyond their normal schedule since mid-March to provide practice resources for our members to cope with the new reality.  In the course of three weeks, AILA staff, in coordination with national committee volunteers, have developed more than 20 substantive practice resources, participated in various meetings and seminars regarding the changes, prepared templates to seek continuances, and pulled together a number of resources regarding law practice management directly due to COVID-19. Many of these requests, including those related to filings, would not have been necessary had the agency adopted temporary measures to toll deadlines and extend expiration dates, to give everyone time to adapt to a new reality.

13. Devoting time to help members respond to the national emergency has diverted AILA staff's time and attention from other necessary priorities, such as preparing resources for our members to file applications subject to the DHS Public Charge Final Rule that took effect on February 24, 2020, reviewing recent immigration form revisions, providing case liaison assistance, advocating for policy priorities, and developing needed practice resources for our members. Since mid-March, I have devoted nearly 95 percent of my time focused on COVID-19 related issues, a majority of which have been focused on issues concerning USCIS's failure to make reasonable accommodations, in particular extending all deadlines and tolling the accrual of unlawful presence.

14. Moreover, AILA staff, national committee volunteers, and chapter leadership have spent a significant amount of time formally and informally advocating to Administration officials and Congressional staff to seek reasonable accommodations in light of the pandemic to ensure flexibility in the immigration system that would help mitigate the spread of the coronavirus, while minimizing the harm that foreign nationals would suffer from falling out of status and being unable to safely and timely leave the United States due to health and travel restrictions. I have personally been involved in the drafting of five formal letters to DHS and USCIS leadership seeking guidance on the Department and Agency's response to the national emergency and detailing reasonable accommodations that DHS and USCIS could make in light of the global crisis.[1]

---

[1] AILA Sends Letter to USCIS Demanding Immediate Suspension of All Deadlines – March 23, 2020
AILA Requests Additional Accommodations from USCIS to Facilitate Filings During National Emergency – March 23, 2020
AILA Sends Letter to USCIS Regarding California's "Stay at Home" Order - March 20, 2020
AILA's Colorado Chapter Calls on USCIS to Immediately Suspend In-Person Office Interviews to Protect Public Health – March 17, 2020
AILA Sends Letter to USCIS Requesting Guidance on Its Response to COVID-19 – March 16, 2020
Letter from AILA's Colorado Chapter to USCIS Field Office in Colorado – March 15, 2020.

15. For example, on March 16, 2020, AILA sent a 5-page letter to Mr. Ken Cuccinelli, the Senior Official Performing the Duties of the Director at USCIS, outlining a number of important accommodations that USCIS could make to implement social distancing and ensure that individuals did not violate immigration laws as a result of the national emergency. USCIS has only taken a limited number of steps to implement social distancing. In this letter, AILA recommended that USCIS adopt the following measures to ensure that individuals do not accrue unlawful presence:

    a. Deem the national emergency over the COVID-19 outbreak to be an "extraordinary circumstance beyond the control of the applicant or petitioner" pursuant to 8 CFR 214.1(c)(4) and 8 CFR 248.1(b)(1) and excuse any late filings of extension of stay or change of status requests on this basis for up to 90 days after the end of the national emergency.

    b. Grant an automatic extension of stay for a period of up to 90 days to individuals whose nonimmigrant status is expiring.

    c. Provide an automatic grant of deferred action for the duration of the national emergency for individuals whose status has expired and cannot be extended or changed.

    d. Provide clear guidance regarding how individuals admitted under the Electronic System for Travel Authorization (ESTA) and the Visa Waiver Program (VWP) and are not able to depart prior to their expiration of stay, due to severely restricted travel, may make a satisfactory departure request with a local USCIS field office pursuant to 8 CFR 217.3.

USCIS has failed to announce any of these necessary measures to protect individuals from falling out of status and accruing unlawful presence through no fault of their own, which could subject them to bars from reentry into the United States.

16. As the crisis worsened and the impact of the situation on our members' practices became more evident, AILA sent another 3-page letter dated [March 23, 2020](#) to Mr. Cuccinelli, requesting reasonable accommodations from USCIS to facilitate filing of petitions and applications during the National Emergency, so that our members could fulfill their ethical obligations to their clients in a safe manner and ensure that their clients or their employees were able to preserve their lawful immigration status.  The simple requests outlined in the letter, such as allowing for digital signatures, electronic submission of documents, and electronic payment, have all been met with silence.

17. Rather than fully focusing our already limited resources to provide guidance to our members on important substantive, practice, and professional needs, AILA staff has had to divert a significant amount of time to lobby and persuade USCIS to do the right thing in a time of global crisis. Without USCIS taking necessary measures to extend all filing and response deadlines and announcing the tolling of expiration dates and accrual of unlawful presence, AILA staff will continue to receive an onslaught of demands from its members to help address agency inaction and to develop new resources for their practices, many of which are well outside of our wheelhouse, such as how to apply for small business loans and how to properly wear protective equipment as members are required to continue to interact with clients and staff, as well as providing substantive guidance on the impact of unemployment, overstays, and public charge during the time of COVID-19 on foreign nationals.  Without USCIS taking necessary measures to extend all

filing and response deadlines and announcing the tolling of expiration dates and accrual of unlawful presence, our members will either have to jeopardize their own health and safety or risk failing to meet their professional obligations to their clients – both of which will result in a loss of business and financial revenue for our members.  In turn, this will adversely impact their ability to maintain their membership with AILA, their ability to purchase AILA publications and attend conferences, which will jeopardize AILA's financial viability as a non-profit organization.  While we recognize that this is a difficult financial time for everyone, and the concern for health and safety for families and employees is not limited to AILA and its members, we have seen a number of federal agencies recognize the need to take temporary measures to relieve the strain on its customers and stakeholders, such as the Internal Revenue Service, the Securities Exchange Commission and the Department of Labor.  It is imperative that USCIS follow suit and ensure that necessary procedures are put into place for the sake of our country's health and security, without unfairly punishing foreign nationals stuck in a Catch-22 situation.

April 3, 2020

/s/ Sharvari Dalal-Dheini
Director of Government Relations
American Immigration Lawyers Association